UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENT OVERTON,

       Plaintiff,

-v-

No.  09-cv-13283-BAF-MAR
Hon. Bernard A. Friedman

CITY OF YPSILANTI,
a Michigan municipal corporation,

       Defendant.

_____/

## DEFENDANT'S MOTION FOR PROTECTIVE ORDERS

# EXHIBIT H

## *Cherenfant v. Nationwide Credit, Inc.,*

No. CIV 03-60655, 2004 WL 5313965 (S.D. Fla. 2004)

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
**(Cite as: 2004 WL 5313965 (S.D.Fla.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. Florida.
Mona CHERENFANT, Plaintiff,
v.
NATIONWIDE CREDIT, INC., Defendant.
**No. CIV 03-60655.**

May 10, 2004.

Chris Kleppin, Glasser, Boreth, Ceasar & Kleppin, Plantation, FL, for Plaintiff.

Simeon D. Brier, Antoinette Theodossakos, Edwards & Angell, P.A., West Palm Beach, FL, Martin W. Aron, Edwards & Angell, LLP, Short Hills, NJ, for Defendant.

*ORDER ON PLAINTIFF'S MOTIONS TO COMPEL*

SELTZER, Magistrate J.

*1 THIS CAUSE is before the Court on various motions to compel filed by Plaintiff. The Court has carefully reviewed the motions and supporting memoranda. Defendant's opposing memoranda, and Plaintiff's replies thereto and being sufficiently advised, it is hereby ORDERED as follows:

1. Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's First Request for Production of Documents to Defendant (DE 29) is GRANTED in part and DENIED in part as more specifically set forth below;

2. Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's Third Request for Production of Documents to Defendant (DE 27) is DENIED as moot as Plaintiff has filed an Amended Motion to Compel Discovery Pursuant to Plaintiff's Third Request for Production of Documents to Defendant;

3. Plaintiff's Amended Motion to Compel Discovery Pursuant to Plaintiff's Third Request for Production of Documents to Defendant (DE 28) is GRANTED in part and DENIED in part as more specifically set forth below;

4. Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's Fourth Request for Production of Documents to Defendant (DE 30) is GRANTED in part and DENIED in part as more specifically set forth below;

5. Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's Fifth Request for Production of Documents to Defendant (DE 32) is GRANTED in part and DENIED in part as more specifically set forth below; and

6. Plaintiff's Motion to Compel Discovery Pursuant to Plaintiff's First Set of Interrogatories (DE 31) is GRANTED in part and DENIED in part as more specifically set forth below.

*Allegations of Amended Complaint*

Plaintiff was employed with the defendant company from August 1999 until she was (allegedly) constructively discharged on March 27, 2003. Defendant is in the debt collection business, and Plaintiff was employed as a collector. In her Amended Complaint, Plaintiff asserts claims for **racial discrimination** in the terms and conditions of her **employment**, racially hostile working environment, constructive discharge, and retaliation in violation of 42 U.S.C. § 1981, Title VII, and the Florida Civil Rights Act. Plaintiff additionally assert violations of the Fair Labor Standards Act ("FLSA").

With respect to Plaintiff's racial discrimination and retaliation claims, the Amended Complaint alleges that in 2001, Al Guthrie, the Director of Operations in Defendant's Fort Lauderdale facility, made a disparaging comment about black employees and that he refused to apologize for that comment. Some of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Cherenfant v. Nationwide Credit, Inc.**

*H-1*

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
(Cite as: 2004 WL 5313965 (S.D.Fla.))

Page 2

the black employees complained to Defendant's corporate Human Resources Department (located in Georgia) about the comment, and some black employees quit their jobs allegedly because of Guthrie's comment and his refusal to apologize. Plaintiff also allegedly heard Guthrie use racial epithets when referring to other black employees. Plaintiff complained to Ken Horton at the corporate Human Resources in April 2002 about Guthrie's alleged racism and degrading remarks. According to the Amended Complaint, Horton informed Plaintiff that he would follow up on her complaint and resolve the situation, yet she never heard from him again.

*2 Plaintiff alleges that during her telephone conversations with Horton, Marc Lanni, one of Defendant's managers, monitored the conversations from a telephone in his office, causing Plaintiff to be uncomfortable discussing the discrimination issues with Horton.

In October 2002, Plaintiff complained to her immediate supervisor, Dave Hochfeld, about Guthrie's statements. Hochfeld allegedly informed Plaintiff that Guthrie did not like her, and Hochfeld then used a racial epithet in referring to Plaintiff. In December 2002, Plaintiff complained to the corporate Human Resource Department about Hochfeld's remark.

The Amended Complaint additionally alleges that Plaintiff complained to management in November 2001 and April 2002, but it fails to indicate the nature of these complaints or to identify the individuals to whom the complaints were made.

According to the Amended Complaint, after Plaintiff complained Defendant retaliated by assigning her unfavorable accounts that were unlikely to be collectible. The Amended Complaint alleges that Plaintiff's employment deteriorated to a point that Defendant did not assign her a manager or provide her with documentation from which she could determine her performance. Further, Defendant allegedly assigned her (unspecified) tasks that

made it impossible to earn any commissions. Lanni then suspended Plaintiff from March 19, 2003, through March 23, 2003, for an (unspecified) pretextual reason. And on March 27, 2003, Plaintiff quit her job allegedly because she was experiencing an intolerable level of racism.

With respect to Plaintiff's FLSA claim, the Amended Complaint alleges that Plaintiff and others similarly situated were not paid time and one-half for all hours worked in excess of forty a week. Plaintiff and the other similarly situated employees allegedly were required to "clock out" during lunch, to continue to work at their desks while they ate lunch, and to then "clock in" after the lunch period was over.

### First Request for Production of Documents

1. The motion with respect to Requests 1, 3-7, 9, 10, 12, 13, 16, 18, 19, 21, 26, 29-32, 35, and 36 is GRANTED, Defendant states that it has produced documents responsive to these Requests; Plaintiff counters that Defendant has not produced all responsive documents. Within fourteen (14) days of the date of this Order, Defendant shall produce all non-privileged documents responsive to these Requests that it has not already produced.

2. The motion with respect to Requests 8 and 11 is GRANTED in part. Request 8 seeks the personnel files of all employees who filed discrimination complaints based on race, ethnicity, ancestry, and/or national origin with Defendant or any government agency within the last five years, and Request 11 seeks copies of the discrimination charges filed. Defendant objects to producing the entire personnel files sought by Request 8, but it has agreed to produce documents that evidence claims of racial discrimination and harassment in its Fort Lauderdale facility during Plaintiff's tenure, subject to a protective order. Plaintiff argues that Defendant's production should not be limited to documents concerning employees at the Fort Lauderdale facility because "days after [she] lodged a complaint of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

H-2

Page 3

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
**(Cite as: 2004 WL 5313965 (S.D.Fla.))**

harassment and discrimination based on race to the Defendant's corporate Human Resources office .... she was retaliated against and eventually forced out. Thus, obviously, the Defendant's own corporate office was in on the retaliatory termination." The Court disagrees.

*3 All of the alleged discriminatory conduct-making of racially disparaging remarks, subjecting Plaintiff to a racially hostile environment, and assigning Plaintiff unfavorable accounts-occurred in the Fort Lauderdale facility. Plaintiff's only allegation concerning corporate Human Resources is that Horton failed to get back to her after she lodged her discrimination complaints. This does not raise a inference that the corporate Human Resources department participated in the alleged retaliatory conduct-assigning Plaintiff unfavorable accounts and tasks that made it difficult to earn commissions and refusing to assign her a manager or furnish her with documentation necessary to determine her performance. Nor does Plaintiff's summary allegation that Defendant engaged in a pattern and practice of discrimination and retaliation justify discovery of racial complaints in Defendant's facilities other than Fort Lauderdale. Although Defendant has agreed to produce racial discrimination complaints during Plaintiff's tenure, the Court agrees with Plaintiff that a five-year period is more appropriate. Plaintiff, however, has failed to demonstrate the relevancy or need for the entire personnel files of all employees that have made racial discrimination claims.

Accordingly, within 14 days of the date of this Order. Defendant shall produce to Plaintiff all discrimination charges or complaints made by any of its employees at its Fort Lauderdale facility within the last five (5) years, and it shall produce those portions of these employees' personnel files that reflect such discrimination complaints and Defendant's investigations and responses thereto. Defendant shall also produce documents relating to performance evaluations, disciplinary history, promotions, discharges, and termination or cessation of employment for each such employee. The personnel files and the information derived therefrom shall be subject to the Confidentiality Order entered herein.

3. The motion with respect to Request 22 is GRANTED. Request 22 seeks the personnel files of four managerial employees located in Defendant's Fort Lauderdale facility and the personnel file of its Director of Human Resources in Atlanta, Georgia. Courts have held that **personnel files** of managerial employees are **discoverable**. *See, e.g., Griffith v. Wal-Mart Stores, Inc.,* 163 F.R.D. 4, 5 (E.D.Ky.1995)("the personnel files of the managerial employee may still be relevant to plaintiff's claims [absent a pattern and practice allegation], since those files may contain documentary evidence of discriminatory acts against this plaintiff"). The Court concludes that at least portions of these personnel files are relevant or are likely to lead to the discovery of admissible evidence. These individuals were management personnel who Plaintiff alleges engaged in discriminatory conduct and/or retaliation or to whom Plaintiff complained of discriminatory conduct. Moreover. Defendant has identified these individuals as witnesses in its Rule 26 disclosures.

*4 Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce to Plaintiff the personnel files of Al Guthrie, Michael Culbranson, Dave Hochfeld, Ken Horton, and Mark Lanni, Defendant need not produce documents relating to medical information or retirement plans. The documents and the information derived therefrom shall be subject to the Confidentiality Order entered herein.

4. The motion with respect to Request 23 and 24 is GRANTED in part. Request 23 seeks documents relating to Defendant's affirmative action plans, and Request 24 seeks documents that Defendant relied on in developing those plans. Defendant agrees to produce documents responsive to these requests that relate to racial disparity or racial discrimination (but not gender or age) and that are not subject to the self-critical analysis privilege.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

H-3

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
**(Cite as: 2004 WL 5313965 (S.D.Fla.))**

The self-critical analysis privilege protects from discovery certain self-appraisals. The court in *Freirmuth v. PPG Indus.,* 218 F.R.D. 694 (N.D.Ala.2003), explained the rationale of the privilege: "Courts recognizing the self-critical analysis privilege have done so to encourage employers to undertake candid self-evaluations of their performance.... Stated conversely, the rationale is not to create a chilling effect of a company's desire to engage in candid self-evaluation." *Id.* at 696-97. The Eleventh Circuit has not considered whether to recognize a self-critical analysis privilege, and the district courts in this Circuit have reached differing conclusions. *See Id.* at 696-698 (declining to recognize self-critical analysis privilege in employment context); *Johnson v. United Parcel Serv., Inc.,* 206 F.R.D. 686, 693 (M.D.Fla.2002)(declining to recognize self-critical analysis privilege in employment discrimination case); *Reid v. Lockheed Martin Aeronautics Co.,* 199 F.R.D. 379, 381-87 (N.D.Ga.2001)(concluding that self-critical analysis privilege may apply in discrimination context, and finding that privilege did protect diversity council reports from disclosure, but not affirmative action plans); *John v. Trane Co.,* 831 F.Supp. 855, 856 (S.D.Fla.1993)(Gonzalez, J.) (recognizing self-critical analysis privilege in employment discrimination case and requiring production of affirmative action plan, "except those portions which contain subjective evaluations made by the defendant's management."). It appears, however, that the majority of courts in other jurisdictions have rejected application of the self-critical analysis privilege in the employment context, particularly in cases decided after *University of Pennsylvania v. EEOC,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). [FN1] *See Abdallah v. Coca Cola Co.,* No. CIV A198CV3679RWS, 2000 WL 33249254, *at 5-7 (N.D.Ga. Jan.25, 2000)(setting forth competing policy considerations and collecting cases). This Court agrees with the reasoning of those cases adopting the majority position-a self-critical analysis privilege should not be recognized in the employment discrimination context. As one district court has stated:

FN1. In *University of Pennsylvania,* the Supreme Court refused to recognize a common-law privilege against disclosure of confidential peer review materials in a Title VII employment discrimination case.

**\*5** [R]ecognizing a self-critical analysis privilege is questionable when one considers the possibility that, if a company engages in a self-critical analysis, and then does nothing as a result of damaging findings, highly relevant evidence of an employer's intent would be excluded from discovery and impede the public's important interest in enforcement of this nation's equal employment opportunity laws.

*Freiermuth,* 218 F.R.D. at 698. Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce to Plaintiff all documents responsive to Requests 23 and 24, but limited to affirmative action plans relating to race.

5. The motion with respect to Request 25 is GRANTED in part. Request 25 seeks all documents that indicate the breakdown of Defendant's workforce by each of the following characteristics: "name, date of hire, transfers, promotion, rate of pay, and gender of employees and independent contractors during the time Cherenfant provided services to the company to the present time." Defendant states that it will produce certain documents responsive to this Request subject to a protective order; it, however, objects to producing documents pertaining to the transfer and promotion of employees, to the gender of employees, and to independent contractors. The Court agrees that documents concerning these areas are not relevant to either Plaintiff's race discrimination and retaliation claims or to her FLSA claim. Accordingly, Defendant will not be required to produce documents relating to the transfer and promotion of employees, to the gender of employees, or to independent contractors. However, within fourteen (14) days of the date of this Order, Defendant shall produce to Plaintiff all other documents responsive to this Request, as the Court has now entered a Confidentiality Order.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*H-4*

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
**(Cite as: 2004 WL 5313965 (S.D.Fla.))**

6. The motion with respect to Request 27 is DENIED, Request 27 seeks the personnel file of each employee similarly situated to Plaintiff. Defendant argues that the term "similarly situated" is overly broad and that the Request is unduly burdensome and seeks irrelevant documents. Plaintiff has clarified that she is seeking only the files of all collectors at Defendant's Fort Lauderdale facility. According to Defendant, there are 409 collectors at its Fort Lauderdale facility. The Court agrees that the Request is overly broad and unduly burdensome.

7. The motion with respect to Request 28 is GRANTED in part. Request 28 seeks all studies, reports, or analyses related to Defendant's employment practices, policies, procedures, and statistics for a five year period. The Court concludes that this Request is overbroad, and, therefore, will limit the Request to all such documents relating to race. Within 14 days of the date of this Order, Defendant shall produce to Plaintiff all non-privileged documents relating to race that are responsive to this Request.

8. The motion with respect to Request 37 is GRANTED. Defendant states that it has produced some non-privileged documents responsive to this Request and is preparing a privilege log as to privileged documents. It additionally agrees to produce additional responsive documents subject to a protective order governing confidentiality. As the Court has now entered a Confidentiality Order, within fourteen (14) days of the date of this Order. Defendant shall produce all non-privileged documents responsive to this Request and shall prepare a privilege log for all withheld documents.

*Amended Third Request for Production of Documents*

**\*6** 1. The motion with respect to Requests 1-4, 5, 10, 11, 13-15, and 18-21 is GRANTED. Defendant states that it has already produced or will produce documents responsive to these Requests. Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce to Plaintiff all non-

privileged documents responsive to these Requests that it has not already produced.

2. The motion with respect to Request 12 is DENIED to the extent that it seeks all documents indicating the names, addresses, and telephone numbers for all employees at Defendant's Fort Lauderdale facility during Plaintiff's tenure and GRANTED to the extent that the Court will require Defendant to furnish a list of its employees and their addresses. Defendant argues that Plaintiff's Request is overbroad and unduly burdensome in that there are 444 individuals employed in the Fort Lauderdale facility. Defendant further argues that the Request is premature because the District Court has not yet decided whether this case should proceed as a collective action.

The Court agrees that the Request is premature to the extent that it seeks the information in order to notify other employees of the FLSA claim. But Plaintiff argues that such information is also relevant to her Title VII claims; she contends that the information will permit her to communicate with other employees and determine who she needs to depose. This Circuit has noted that as a normal discovery matter in a hostile work environment case, a plaintiff may propound interrogatories requesting the names and mailing addresses of a defendant employer's non-supervisory employees. The court explained that such information would permit the plaintiff to communicate and depose those employees "in order to determine whether the alleged hostile environment was so pervasive that notice to higher management might be inferred." *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1008 n. 19 (11th Cir.1997). Here, Plaintiff has asserted a racially hostile environment claim, and, thus, under *Jackson* the names and addresses of Defendant's employees are discoverable. Such information, however, is more appropriately sought through an interrogatory; the production of all documents reflecting the names and addresses of all employees would most likely result in the production of a multitude of documents. Accordingly, the Court will

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*H-5*

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
**(Cite as: 2004 WL 5313965 (S.D.Fla.))**

not require Defendant to produce such documents. However, in the interest of facilitating discovery, the Court will not require Plaintiff to now propound an appropriate interrogatory; instead, it will require Defendant to identify the names and addresses of all non-supervisory employees at its Fort Lauderdale facility during Plaintiff's tenure. Defendant shall furnish such information to Plaintiff within fourteen (14) days of the date of this Order.

### *Fourth Request for Production of Documents*

1. The motion with respect to Requests 1, 6, 11, 14, 17, 24, and 26 is GRANTED. Defendant states that it has already produced documents responsive to these Requests; it, however, fails to indicate whether it has produced all responsive documents. Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce to Plaintiff all non-privileged documents responsive to these Requests that it has not already produced.

*7 2. The motion with respect to Request 2 is DENIED to the extent it seeks all documents that refer, relate, or pertain to the number of individuals currently employed by Defendant and the number of individuals employed at the time of Plaintiff's separation from employment. The motion is GRANTED to the extent that the Court will require Defendant to provide the information sought by this Request. Plaintiff argues that the number of employees is relevant to Title VII's damages cap. The Court agrees that the number of employees is relevant to her claim, but concludes that the document request is overbroad in that it calls for all documents relating to the number of employees. It would place an undue burden on Defendant to produce innumerable documents relating to the number of its employees when all that is relevant is a numerical figure. This information is better sought through an interrogatory. To facilitate discovery at this stage of the litigation, however, the Court will not require Plaintiff to now propound an appropriate interrogatory; instead, it will require Defendant to identify the number of individuals currently em-

ployed by Defendant and the number of individuals employed at the time of Plaintiff's separation from employment. Defendant shall furnish this information within fourteen (14) days of the date of this Order.

3. The motion with respect to Requests 3 and 4 is DENIED. Request 3 seeks all documents that refer to or relate to "the name, last known address, race, job position at date of hire, and current position with the Defendant of all employees employed with the Defendant at the time of Plaintiff's hire with the Defendant." Request 4 seeks the same information limited to employees at Defendant's Fort Lauderdale facility. The Court finds that these Requests are overbroad.

4. The motion with respect to Request 5 is GRANTED. This Request seeks all notes from corporate Human Resources memorializing race discrimination and/or harassment and/or retaliation complaints from employees in Defendant's Fort Lauderdale office during Plaintiff's employment. Defendant has agreed to provide these documents, subject to a protective order governing confidentiality. The Court has already entered a Confidentiality Order. Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce to Plaintiff all non-privileged documents responsive to this Request (limited to the Fort Lauderdale facility).

5. The motion with request to Requests 7-10, 12-13, 15-16, 18-20, and 23 is GRANTED. Defendant agrees to produce documents responsive to these Requests subject to a protective order governing confidentiality. The Court has already entered a Confidentiality Order. Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce to Plaintiff all non-privileged documents responsive to these Requests.

6. The motion with respect to Requests 21 and 22 is DENIED. Request 21 seeks all documents that relate to or refer to "the name, address, position at date of hire, the date of hire, the current position, or the date of separation from employment, and if sep-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
**(Cite as: 2004 WL 5313965 (S.D.Fla.))**

arated, the reason for separation, of all black employees employed by Defendant in Defendant's Fort Lauderdale office in the past five years." Request 22 seeks the identical information with respect to all supervisory and/or management officials at Defendant's Fort Lauderdale facility. The Court concludes that these Requests are overbroad.

*Fifth Request for Production of Documents*

**\*8** 1. The motion with respect to Requests No. 1, 18, 19, 23, 28, 29-32, and 34 is GRANTED, Defendant states that it has produced all documents responsive to these Requests; Plaintiff denies that all responsive documents have been produced. To the extent that Defendants have not produced all responsive documents, it shall do so within fourteen (14) days of the date of this Order.

2. The motion with respect to Requests 2, 3, 5-8, 17, and 20-22 is GRANTED. Defendant states that it will produce documents responsive to these Requests, subject to a protective order. The Court has already entered a Confidentiality Order. Accordingly, Defendant shall produce all non-privileged documents responsive to these Requests within fourteen (14) days of the date of this Order.

3. The motion with respect to Request 4 is DENIED. Request 4 seeks documents relating to the (alleged) drug usage by Al Guthrie during his employment with Defendant. Guthrie was the Director of Operations in Defendant's Fort Lauderdale facility who allegedly made racist remarks. Plaintiff argues that information relating to Guthrie's (alleged) drug use may cast doubl on his perceptions and memory and provide evidence to impeach him at trial. Defendant objects to the production of such documents, arguing that the Request is designed merely to harass and embarrass. Courts may permit discovery of documents or information that is to be used solely to impeach a witness. *See, e.g., Duck v. M.L. Warren,* 160 F.R.D. 80, 83 (E.D.Va.1995); *Tisby v. Buffalo Gen. Hosp.,* 157 F.R.D. 157, 169-70 (W.D.N.Y.1994). But as one

district court has pointed out, "[d]efining the scope of discovery related to impeachment is troublesome; the areas to be probed to test a witness' credibility are virtually limitless." *Davidson Pipe Co. v. Laventhol and Horwath,* 120 F.R.D. 455, 462 (S.D.N.Y.1988). Courts, therefore, have limited discovery of impeachment evidence to that which would likely lead to admissible evidence. *Id.* Assuming *arguendo* that Guthrie's (alleged) drug use would be admissible, the Court nonetheless declines to compel production of the documents sought. One factor courts have considered in determining whether to permit discovery of impeaching evidence is whether the party seeking disclosure has a foundation or factual basis for its inquiry. *Id.* at 463. Here, Plaintiff merely states that unidentified individuals informed her counsel that Guthrie was involved in heavy drug use. This proffer does not provide a sufficient factual predicate to permit discovery of the documents sought by this Request.

4. The motion with respect to Requests 10-13 is GRANTED. These Requests seek documents pertaining to Ken Horton's job descriptions and performance evaluations, to any discipline received by Horton, and to employee or customer complaints asserted against Horton. Plaintiff has alleged that she and others complained to Horton about race discrimination and that he failed to investigate these complaints. The Court finds that the documents sought are relevant or likely to lead to admissible evidence. Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce all non-privileged documents responsive to these Requests.

**\*9** 5. The motion with respect to Request 14 is GRANTED. Request 14 seeks all documents (including investigative reports) pertaining to any investigation of racial discrimination, racial harassment, and retaliation complaints regarding Defendant's Fort Lauderdale facility for the past three years. The Court concludes that such documents are relevant or are likely to lead to the discovery of admissible evidence. Accordingly, within fourteen

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*H-7*

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
**(Cite as: 2004 WL 5313965 (S.D.Fla.))**

(14) days of the date of this Order, Defendant shall produce to Plaintiff all non-privileged documents responsive to this Request.

6. The motion with respect to Requests 24-27 is GRANTED. These Requests seek documents pertaining to Mark Lanni's job descriptions and performance evaluations, to any discipline received by Lanni, and to employee or customer complaints asserted against Lanni. Plaintiff has alleged that Lanni, one of Defendant's managers, monitored telephone calls in which discrimination complaints to Horton were made, that Lanni assigned Plaintiff tasks that made it impossible for her to earn commissions, and that Lanni suspended her for a pretextual reason. The Court finds that the documents sought are relevant or likely to lead to admissible evidence. Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce all non-privileged documents responsive to these Requests.

7. The motion with respect to Request 33 is DENIED with leave to renew after conferring with Defendant as to what documents are being sought by this Request. Plaintiff contends that Request 33 seeks documents relating to the commissions she earned. Defendant contends that Request 33 seeks the personnel files of black employees who complained to corporate Human Resources during Plaintiff's employment.

*First Set of Interrogatories*

1. The motion with respect to Interrogatories 1, 2, and 3 is GRANTED in part. These Interrogatories request that Defendant identify all black employees, all white employees, and all Hispanic employees in Defendant's Fort Lauderdale facility during Plaintiff's employment. The Interrogatories further request that for each employee. Defendant provide the employee's address, date of hire, position and salary at date of hire, date of all pay raises and the amount, current position, and, if separated from employment, the date and reason for separation.

Through these three interrogatories, Plaintiff is effectively seeking information about virtually all of the 409 collectors in the Fort Lauderdale facility. The Court, therefore, finds that these Interrogatories are overbroad and unduly burdensome. Moreover, much of the information sought does not appear relevant to Plaintiff's claims. For example, the Amended Complaint makes no allegations concerning disparity in pay, rendering information about salary and pay raises irrelevant.[FN2] Plaintiff has alleged that black employees quit their employment in response to management's use of racial epithets and being subjected to a racially hostile environment. She argues that she is entitled to the requested information as to the black employees who quit or were fired under these circumstances so that she may learn the attendant circumstances and subpoena witnesses for deposition. The Court agrees. Plaintiff, however, has failed to explain how the information sought with respect to non-black employees is relevant to her claims or is likely to lead to the discovery of admissible evidence.

> FN2. In her reply memorandum, Plaintiff contends that she has alleged that her pay was less than similarly situated non-black employees: she cites paragraphs 35 and 39 of the Amended Complaint. Neither of these paragraphs, however, allege disparity in pay. Paragraph 35 alleges that Plaintiff was assigned unfavorable accounts that were unlikely to be collected and that she was able to outperform other employees who were assigned similar accounts. And paragraph 39 alleges that Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. The Court has carefully reviewed the First Amended Complaint and can find no allegations as to disparate pay.

*10 Accordingly, within fourteen (14) days of the date of this Order, Defendant shall answer this Interrogatory, identifying all black employees at its Fort Lauderdale facility who either quit or were

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*H-8*

Page 9

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
**(Cite as: 2004 WL 5313965 (S.D.Fla.))**

fired during Plaintiff's tenure and providing each employee's address, date of hire, positions held, date of separation from employment and reason for separation. The motion with respect to these Interrogatories is DENIED in all other respects.

2. The motion with respect to Interrogatory 4 is DENIED, Interrogatory 4 requests that Defendant indicate any discipline given to the employees identified in response to Interrogatories 1-3, and it further seeks certain information concerning such discipline. Defendant responds that the interrogatory is improper because "it is not tied to any claims asserted by plaintiff as to liability for any alleged act of discrimination. Discipline may well have been administered for absenteeism, insubordination, theft or other reasons, completely unrelated to plaintiff's allegations in her Complaint." The Court agrees that the Interrogatory is overly broad in that it seeks information as to all discipline given to the 409 collectors in the Fort Lauderdale facility, even where the type of discipline is not relevant to Plaintiff's claim. The Court, however, recognizes that information as to discipline of other employees may lead to the discovery of admissible evidence. Accordingly, Plaintiff shall have seven (7) days to serve a more narrow interrogatory, and Defendant shall have seven (7) days thereafter to respond thereto.

3. The motion with respect to Interrogatory 5 is GRANTED in part. Interrogatory 5 requests that Defendant indicate whether any employees listed in response to Interrogatories 1-3 ever complained to Defendant or to any governmental entity or brought a lawsuit asserting that they were subject to racial discrimination and/or harassment or retaliated against because of such complaints. This Interrogatory also seeks information about such complaints and Defendant's responses thereto. The Court has required Defendant to produce documents concerning racial discrimination and/or harassment and retaliation complaints; Plaintiff can ascertain the information sought from these documents. However, Plaintiff has not heretofore requested documents or information with respect to other racial discrimina-

tion litigation. Accordingly, within fourteen (14) days from the date of this Order, Defendant shall answer this Interrogatory by identifying any collectors in its Fort Lauderdale facility who brought a racial discrimination, racial harassment, and/or retaliation lawsuit against the company during Plaintiff's tenure with Defendant, the Court in which the lawsuit was filed, the date the case was filed, the case number, and the status or outcome of the litigation.

4. The motion with respect to Interrogatory 6 is DENIED. Interrogatory 6 requests that Defendant indicate the address, race, current employment status, and the immediate supervisor of the employee at the time of discipline for all employees identified in Interrogatories 4 and 5. The Court has denied Interrogatory 4 (relating to discipline) because it is overbroad, but has afforded Plaintiff leave to serve a more narrow interrogatory. Accordingly, Plaintiff may request the information sought in this Interrogatory when it serves the new interrogatory.

*11 5. The motion with respect to Interrogatory No. 7 is GRANTED to the extent that the Court will permit Defendant to produce documents from which the information may be ascertained. Interrogatory 7 requests that Defendant identify each account assigned to Plaintiff to collect and provide other information relating to these accounts. Defendant has agreed to produce documents relating to these accounts, subject to a protective order. Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce the documents from which the information sought by Interrogatory 8 may be ascertained.

6. The motion with respect to Interrogatory 8 is GRANTED in part. Interrogatory 8 requests that Defendant identify all discipline Plaintiff received while employed by Defendant and seeks other information concerning that discipline. Defendant responds that the information sought is contained in Plaintiff's personnel file, which has already been produced to Plaintiff. Plaintiff counters that De-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*H-9*

Page 10

Not Reported in F.Supp.2d, 2004 WL 5313965 (S.D.Fla.)
**(Cite as: 2004 WL 5313965 (S.D.Fla.))**

fendant's response is insufficient because all discip-
linary action may not be included in her personnel
file. Within fourteen (14) days of the date of this
Order, Defendant shall supplement its response to
Interrogatory 8, providing the information sought as
to any discipline not reflected in Plaintiff's person-
nel file, and if no such discipline exists. Defend-
ant's supplemental answer shall so state.

It is further ORDERED that if Defendant withholds
any documents or information under a claim of
privilege, it shall furnish a privilege log in accord-
ance with the Local Rule within fourteen (14) days
of the date of this Order.

DONE AND ORDERED in Fort Lauderdale, Flor-
ida, this 7th day of May 2004.

S.D.Fla.,2004.
Cherenfant v. Nationwide Credit, Inc.
Not Reported in F.Supp.2d, 2004 WL 5313965
(S.D.Fla.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

H -10